John J. Reilly (Bar No. 302423)
Susan Poder MacFarlane (Bar No. 512015)
Holland & Knight LLP
195 Broadway
New York, New York 10007
(212) 513-3200

Attorneys for Defendants/Third-Party Plaintiffs
Fenclo Ltée and U.S. Fence, Inc.

04-40144

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

THE HAMILTON GROUP (DELAWARE), INC.
Individually and as successor in interest to
AWM TRANSPORTATION CO., INC.,

      Plaintiff,

v.

U.S. FENCE, LLC, and FENCLO LTEE,

      Defendants/
      Third-Party
      Plaintiffs,

v.

AWM TRANSPORTATION, INC.,

      Third-Party
      Defendant.

No. 5:03 – CV – 849 NPM/DEP

THIRD PARTY COMPLAINT

---

  Defendants/third-party plaintiffs Fenclo Ltée and U.S. Fence, Inc., f/k/a U.S. Fence, LLC, by their attorneys, Holland & Knight LLP, for their Third Party Complaint against third-party defendant AWM Transportation, Inc., state as follows:

## THE PARTIES

1. Defendant/third-party plaintiff U.S. Fence, Inc. ("U.S. Fence"), is a company organized and existing under the laws of the State of Ohio, with an office for the transaction of business at 7830 Freeway Circle, Middleburg Heights, Ohio.

2. Third-party plaintiff Fenclo Ltée ("Fenclo") is a company organized and existing under the Province of Quebec, Country of Canada with an office for transaction of business at 583 Grand Bernier Nord, Saint-Jean-sur-Richelieu, Quebec, Canada.

3. Plaintiff, The Hamilton Group (Delaware), Inc. ("Hamilton"), is, on information and belief, a Delaware corporation authorized to do business in the State of New York and having its principal place of business at 100 Elwood David Road, North Syracuse, New York.

4. Upon information and belief, third-party defendant AWM Transportation, Inc. ("AWM") is a Massachusetts Corporation, with an office for transacting business at 107 Lake Street, Webster, Massachusetts.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this action involves a dispute between entities of different States and/or Countries and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that a substantial part of the events and/or omissions giving rise to plaintiff Hamilton's claims occurred in this District.

7. This Court has personal jurisdiction over third-party defendant AWM because, among other things, AWM is doing business in the State of New York and AWM sold the accounts receivable at issue in this litigation to a New York corporation, Hamilton, giving rise to this action.

## FACTUAL BACKGROUND

8. AWM is in the business of storing, processing, delivering and repairing goods for manufacturers and seller of various products.

9. U.S. Fence and Fenclo are affiliated companies whose businesses are the production and sale of wood, vinyl and aluminum fencing products ("Products").

10. On or about December, 2001, Fenclo and AWM entered into a written agreement for AWM to store, process, deliver and repair fencing for Fenclo (the "Fenclo Contract").

11. Fenclo and AWM operated under the Fenclo Contract from December, 2001 until October, 2002.

12. AWM and U.S. Fence entered into a bailment agreement on or about November 2, 2000 (the "Bailment Agreement"), under which AWM agreed to, among other things, store Products for U.S. Fence.

13. From the Spring of 2000 until October, 2002, AWM acted as bailee for U.S. Fence's Products under the Bailment Agreement.

14. On or about February 1, 2002, U.S. Fence and AWM entered into another written agreement regarding U.S. Fence's participation in the Home Depot Direct Delivery Program (the "Program").

15. Under the Program, U.S. Fence was to supply Products to Home Depot customers directly upon receiving orders from Home Depot on behalf of such customers.

16. The February 1, 2002 agreement between U.S. Fence and AWM (the "Quick Ship Agreement") required AWM, among other things, to deliver or arrange delivery for U.S. Fence's Products sent through the Program.

17. After AWM delivered or arranged the delivery of the Products to Home Depot's customers, AWM was required to supply U.S. Fence with the proof of delivery, which consisted of the consigned bill of lading.

18. During the Summer and Fall of 2002, AWM unjustifiably failed and refused to turn over certain proofs of delivery to U.S. Fence.

19. As a result of AWM's refusal to turn over proofs of delivery, U.S. Fence has been unable to obtain payments from Home Depot for Products delivered under the Program.

20. Hamilton is a factoring company which buys accounts receivable from various entities.

21. AWM sold various accounts receivable to Hamilton based on invoices AWM sent to Fenclo and U.S. Fence.

22. Hamilton alleges that it sent a Notice of Redirection to both Fenclo and U.S. Fence, requesting that Fenclo and U.S. Fence direct payment of all AWM invoices to Hamilton and mail such payments to a post office box in Syracuse, New York, where Hamilton is located.

23. U.S. Fence did not receive the Notice of Redirection allegedly sent to it, and did not forward payments to Hamilton for a certain period of time after the Notice of Redirection was allegedly sent.

24. AWM signed the Notice of Redirection allegedly sent to U.S. Fence and believed and/or still believes that the Notice of Redirection was sent to U.S. Fence.

25. AWM was aware of the Notice of Redirection sent by Hamilton to Fenclo.

26. AWM knew that certain U.S. Fence payments were for invoices which AWM had sold to Hamilton, but when AWM received those payments, AWM kept those payments for itself.

27. From March, 2002, and up until October, 2002, U.S. Fence and Fenclo directed all checks to Hamilton at the post office box requested in Hamilton's Notices of Redirection.

28. On or about March 11, 2002, Hamilton sent a Notice of Redirection to Fenclo directing Fenclo to send all future payments for AWM's invoices to Hamilton at a post office box in Syracuse, New York.

29. Fenclo promptly began redirecting all payments to Hamilton, as requested, starting in April, 2002.

30. Starting in the Summer and Fall of 2002, U.S. Fence and Fenclo determined that AWM had not been fulfilling its obligations to maintain and repair their Products under the respective agreements.

31. Specifically, Products from U.S. Fence and Fenclo stored in AWM facilities were stolen, vandalized and/or damaged.

32. AWM also failed to repair the Products as required by the agreements with U.S. Fence and Fenclo.

33. AWM failed to maintain an inventory of Products and report the inventory to U.S. Fence and Fenclo as it had agreed to do.

34. AWM failed to report all damaged inventory and take responsibility for and credit U.S. Fence and Fenclo for any negative inventory discrepancies or damages caused in AWM's facilities.

35. AWM knew that U.S. Fence and Fenclo's Products were being stolen, vandalized and/or damaged in AWM's facilities, but failed to take appropriate preventative and/or corrective action.

36. Under the agreements between AWM and U.S. Fence and Fenclo, AWM agreed to credit U.S. Fence and Fenclo for all fencing which was damaged, destroyed or otherwise lost due to, among others, AWM's actions or inaction.

37. AWM continues to refuse to credit and compensate U.S. Fence and Fenclo for Products which have been damaged, vandalized and/or stolen.

38. As a result of the dispute regarding AWM's theft, vandalism and damage of Products, AWM, U.S. Fence and Fenclo terminated all agreements between them as of November 1, 2002.

39. AWM agreed to the termination of all agreements with U.S. Fence and Fenclo effective November 1, 2002.

40. AWM continues to refuse to credit and compensate U.S. Fence and Fenclo for the Products which have been damaged, vandalized and/or stolen.

41. AWM has refused and failed to forward payments it received from U.S. Fence for invoices which AWM sold to Hamilton.

## COUNT I
## BREACH OF CONTRACT

42. Fenclo repeats and incorporates its allegations in paragraphs 1 through 41, above, as though fully set forth herein.

43. Fenclo's agreement with AWM required AWM to protect Fenclo's Products from loss, theft and damage.

44. AWM further agreed to repair all Fenclo products that were damaged for any reason.

45. Fenclo's agreement with AWM required AWM to maintain an inventory regarding the Fenclo Products at all times.

46. AWM breached its agreement with Fenclo to protect Fenclo's Products from loss, theft and/or damage.

47. AWM failed to repair Fenclo's Products which were damaged.

48. AWM failed to maintain an inventory of Fenclo's Products.

49. Fenclo's contract with AWM consisted of a bailment agreement with AWM to serve as the bailee.

50. AWM breached the terms of the bailment agreement by failing to properly maintain, protect, and manage Fenclo's Products as set forth above.

51. The value of Fenclo's Products which were stolen, vandalized and/or damaged beyond repair as a result of AWM's breach of contract is $103,100.14 Canadian Dollars, which at the current exchange rate is $77,286.40 U.S. Dollars.

## COUNT II
## BREACH OF CONTRACT

52. Plaintiff U.S. Fence repeats and incorporates its allegations in paragraphs 1 through 51, above, as though fully set forth herein.

53. The Quick Ship Agreement between AWM and U.S. Fence required AWM to protect U.S. Fence's Products from loss, theft and damage.

54. AWM further agreed in the Quick Ship Agreement to repair all U.S. Fence Products that were damaged for any reason.

55. U.S. Fence's Quick Ship Agreement with AWM required AWM to maintain an inventory regarding the U.S. Fence Products at all times and to report the physical inventory weekly to U.S. Fence.

56. AWM breached the Quick Ship Agreement with U.S. Fence by failing to protect U.S. Fence's Products from loss, theft and/or damage.

57.     AWM failed to repair U.S. Fence's Products which were damaged.

58.     AWM failed to maintain an inventory of U.S. Fence's Products or to report accurate inventories to U.S. Fence.

59.     AWM failed to turn over proofs of delivery of U.S. Fence's Products delivered under the Quick Ship Agreement, as required by that Agreement.

60.     As a result of AWM's failure to turn over proofs of delivery, U.S. Fence was unable to receive payments from Home Depot in the amount of $107,905.71 U.S. Dollars.

61.     AWM also breached the terms of the Bailment Agreement by failing to properly maintain, protect, and store U.S. Fence's Products as set forth above.

62.     The value of U.S. Fence's Products which were stolen, destroyed or damaged beyond repair as a result of AWM's breach of contract is $78,205.70 U.S. Dollars.

## COUNT III
## UNJUST ENRICHMENT

63.     U.S. Fence repeats and incorporates its allegations in paragraphs 1 through 62, above, as though fully set forth herein.

64.     AWM sold certain accounts receivables for payments owed by U.S. Fence to Hamilton for collection.

65.     AWM signed a Notice of Redirection, which was purportedly sent to U.S. Fence, and which directs U.S. Fence to make all further payments of invoices received from AWM to Hamilton.

66. AWM continued to receive certain payments from U.S. Fence on invoices it had sold to Hamilton after it signed the Notice of Redirection and after that Notice was allegedly sent to U.S. Fence.

67. Upon information and belief, AWM kept certain payments received from U.S. Fence for invoices AWM had sold to Hamilton, and failed and refused to forward those payments to Hamilton.

68. According to Hamilton, AWM also failed and refused to credit Hamilton with a portion of the payments it received from U.S. Fence for invoices it had sold to Hamilton.

69. AWM's retention of payments for invoices it had sold to Hamilton resulted in AWM becoming unjustly enriched, as AWM was paid twice for the same invoices.

## COUNT IV
### INDEMNIFICATION

70. U.S. Fence repeats and incorporates its allegations in paragraphs 1 through 69, above, as though fully set forth herein.

71. As a result of AWM's tortious conduct in retaining payments from U.S. Fence for invoices which AWM sold to Hamilton, U.S. Fence may be held liable to Hamilton for recovery of those payments.

72. As a result of AWM's misconduct in retaining payments to which it was not entitled, U.S. Fence is entitled to indemnity from AWM for any judgment obtained by Hamilton in this action.

WHEREFORE, defendants/third-party plaintiffs Fenclo Ltée and U.S. Fence, Inc. demand judgment and relief against third-party defendant AWM Transportation, Inc. as follows:

1)  On Count I, Fenclo demands damages in the amount of the U.S. Dollar equivalent of $103,100.14 Canadian Dollars, plus interest, costs, and attorneys' fees;

2)  On Count II, U.S. Fence demands damages in the amount of $186,111.41 U.S. Dollars, plus interest, costs and attorneys' fees;

3)  On Count III, U.S. Fence demands judgment against AWM in an amount to be determined at trial for the amount of payments received and retained by AWM from U.S. Fence for invoices AWM sold to Hamilton;

4)  On Count IV, U.S. Fence demands that AWM indemnify and hold U.S. Fence harmless for any judgment obtained by Hamilton in this Action; and

5)  Defendants/third-party plaintiffs demand such other and further relief as the Court deems appropriate.

Dated: January 30, 2004

                              HOLLAND & KNIGHT, LLP


                              By _/s/ Susan P. MacFarlane_

                              John J. Reilly (Bar No. 302423)
                              Susan Poder MacFarlane
                              (Bar No. 512015)
                              195 Broadway
                              New York, New York 10007
                              (212) 513-3200

                              Attorneys for Defendants/Third-Party
                              Plaintiffs Fenclo Ltée and
                              U.S. Fence Inc.